IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN D. BRYANT, | No. 2:21-CV-0060-TLN-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| BRIAN KIBLER, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's first amended complaint, ECF No. 39.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).

In order to survive dismissal for failure to state a claim, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555-56 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). The mere possibility of misconduct will not suffice to meet this standard. See id. at 679. Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants that support the claims, vague and conclusory allegations fail to satisfy this standard.

## I. PLAINTIFF'S ALLEGATIONS[1]

Plaintiffs names the following Defendants: (1) Kathleen Allision, Secretary of California Department of Corrections and Rehabilitation ("CDCR"); (1) Brian Kibler, Warden of High Desert State Prison ("HDSP"); (3) Jason Picket, Warden of HDSP; (4) Robert Peery, Associate Warden of HDSP; (5) Dr. Kevin Rueter, Chief Medical Executive of HDSP; (6) Dr. Taber, Chief Physician of HDSP; (7) Joseph Bick, Director of California Correctional Health Care Services ("CCHCS"); (8) Diana Toche, Undersecretary of CCHCS; (9) Connie Gipson, Director of Division of Adult Institutions; (10) Matt Williams, Captain at HDSP; (11) Does 1-10, top officials of CDCR, CCCS, HDSP, and San Quentin prisons; (12) C. Barrier, Correctional Officer at HDSP; and (13) S. Gates, Chief, Health Care Correspondence and Appeals Branch at CCHCS. See ECF No. 39, pgs. 4-7. Defendants are sued in their individual and official

---

[1] The Court notes Plaintiff's first amended complaint is 151 pages, most of which are lengthy exhibits. Plaintiff is cautioned that it is the Court's duty to evaluate the factual allegations within a complaint, not to wade through exhibits in order to determine the basis for Plaintiff's claims. For screening purposes, the Court must assume that Plaintiff's factual allegations are true; therefore, it is generally unnecessary to submit exhibits in support of Plaintiff's allegations.

2

capacities. See id.

Plaintiff alleges violations of the Eighth Amendment based on Defendants' knowledge that Plaintiff was at high risk for complications of Covid-19, yet approved the transfer of inmates to HDSP from San Quentin Prison, with inadequate testing procedures in place, and that Defendants failed to properly test and isolate the incoming inmates, resulting in Plaintiff contracting the Covid-19 virus. See generally, ECF No. 39, pgs. 8-12. It appears that Plaintiff is currently housed at R.J. Donovan Correctional Facility but was housed at the HDSP at the time of the alleged injury. See id., pgs. 1, 9.

Specifically, Plaintiff alleges that Defendants Allison, Bick, Toche, Gipson, Kibler, Picket, Peery, Rueter, Taber and Does were deliberately indifferent in the way they handled the Covid-19 pandemic when they approved the transfer of inmates from California Institute for Men to San Quentin Prison without following proper safety precautions. See id., pg. 8. Without proper testing for the virus, the prison had no way of knowing whether the transferred inmates were infected or not, and Defendants and Does were aware of such before the transfers occurred. See id., pgs. 8-9. Plaintiff claims that the transfer of these inmates occurred between May 28, 2020 and May 30, 2020, and that even though some of the inmates to be transferred had symptoms consistent with Covid-19, those inmates were placed on buses where there was no physical distancing. See id., pg. 9. Thereafter, around June 8, 2020, Defendants and Does began transferring inmates from San Quentin Prison to HDSP, and within days there was an outbreak of Covid-19 that started in the unit where those transferred inmates were housed. Plaintiff was housed on the same yard where the outbreak occurred. See id. Plaintiff argues that despite a state-wide emergency lockdown, Defendants and Does defied that lockdown order by transferring inmates between prisons. See id.

On December 6, 2020, Plaintiff's cellmate tested positive for Covid-19 and was moved to a quarantine building, but alleges that other inmates that tested positive were left in the building and not transferred for isolation. See id. On December 7, 2020, Plaintiff was tested for the virus, but the results were negative. See id. However, on December 8, 2022,[2] Plaintiff asserts

---

[2] The Court believes this to be a typographical error and construes this to be 2020.

3

that he began to have Covid-19 symptoms, which became increasingly more severe, he had trouble breathing, but he was afraid to allow prison staff to move or take him to the hospital "because they might force me onto a ventilator and cause me to die." Id. On December 15, 2020, Plaintiff received a positive test result to the Covid-19 virus. See id. Plaintiff claims that he has medical conditions that put him at a high risk of contracting the virus, and submitted a grievance requesting release, which was ultimately denied. See id. As a result of this infection, Plaintiff alleges that he is suffering from long term and possibly permanent lung damage, fluid and congestion in his lungs, trouble breathing, and no sense of smell. See id.

Plaintiff contends that Defendants and other prison staff failed to follow safety guidelines by refusing to wear masks correctly, or at all. See id., pg. 10. In support of this allegation, Plaintiff states that he spoke to a Lieutenant at the prison and was told that officials from CDCR and CCHSC were aware of prison staff not following safety guidelines and had ordered an investigation into such conduct. See id. Particularly, Plaintiff claims that Defendants Kibler, Pickett, and Peery—top administrative officials at HDSP—failed to enforce the safety guidelines by the prison staff, and failed to discipline for violations of these guidelines. See id.

Plaintiff contends that he personally witnessed Defendants Williams, Kibler, Pickett, Peery, and numerous other CDCR officials not wearing their masks correctly, or at all, while interacting with staff or inmates, as well as not following the distancing protocols. See id., pg. 11. In November 2020, Defendant Barrier failed to wear his mask correctly while passing out uncovered food trays and interacting with the inmates in the housing unit, and that Plaintiff filed a grievance regarding this conduct. See id., pgs. 10-11. As a result of this grievance, Plaintiff claims that he was retaliated against by a Sergeant Rigling and threatened by Defendant Williams, who said that if Plaintiff kept filing grievances regarding prison officials' failure to follow Covid-19 safety guidelines, that he "would be retaliated against" and "would never be able to prove anything."[3] Id., pg. 10. According to Plaintiff, prior to Plaintiff testing positive, on December 3, 2020, Dr. Davis[4] went to Plaintiff's cell to check on him because he had a "high risk medical

---

[3] Plaintiff neither names Sergeant Rigling nor claims retaliation in this complaint.
[4] Dr. Davis is not named in this complaint.

4

status" and was at an "extremely high risk of contracting the coronavirus and dying from it due to all [his] underlying medical conditions." See id. Plaintiff states that, in spite of Dr. Davis identifying Plaintiff as high risk, Defendant Gates, the person responsible for processing his grievance appeals, ignored the status and denied his appeal, without ever interviewing or talking to his physicians or Plaintiff. See id. In response to Plaintiff's habeas petition, Plaintiff claims that the CCHCS Defendants and Does falsely stated that Plaintiff was not at a high risk and thus his habeas petition was denied. See id., pg. 11.

Further, Plaintiff states that Defendant Reuter, as Chief Medical Executive at HDSP, oversees his medical staff and training required regarding retaliation, discriminating, and "obstructing inmates from receiving medical care." Id. Plaintiff alleges that, despite this training, Plaintiff was denied a refill of his inhaler when he suffered difficulty breathing and was only provided the inhaler after he filed a health care grievance. See id. However, Plaintiff asserts that because of the Covid-19 infection, even the inhaler doesn't help with his breathing. See id.

Plaintiff seeks compensatory damages. See id., pg. 12.

## II. DISCUSSION

Plaintiff's first amended complaint appears to assert the following Eighth Amendment legal theories: (1) failure to protect; and (2) deliberate indifference to medical needs. Plaintiff also appears to assert a due process claim. For the reasons discussed below, Plaintiff will be provided a further opportunity to amend.

**A.  Eighth Amendment**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer, 511 U.S. at 832. The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter,

1  sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th
2  Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).  A
3  prison official violates the Eighth Amendment only when objectively, the official's act or
4  omission is so serious such that it results in the denial of the minimal civilized measure of life's
5  necessities; and subjectively, the prison official acted unnecessarily and wantonly for the purpose
6  of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, a prison official must have a "sufficiently
7  culpable mind."  See id.
8              1.      Failure to Protect
9              Under these principles, prison officials have a duty to take reasonable steps to
10 protect inmate' safety.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer,
11 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively, the
12 prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2)
13 subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The
14 very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v.
15 Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence
16 is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The
17 knowledge element does not require that the plaintiff prove that prison officials know for a
18 certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion
19 of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must
20 show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a
21 substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if
22 harm ultimately was not averted.  See Farmer, 511 U.S. at 844.
23             Construing Plaintiff's complaint liberally, the Court finds for screening purposes
24 that Plaintiff has sufficiently alleged that he was incarcerated under conditions posing a
25 substantial risk of serious harm and that Defendants were deliberately indifferent to that harm.
26 The transfer of potentially infected inmates and lack of isolation after, as well as the lack of
27 distancing during that transfer, created a substantial risk of serious harm, which Defendants
28 disregarded by failing to enforce their own policies or follow proper safety precautions, such as

testing or isolating transferred inmates, using masks, providing adequate sanitation, hygiene supplies, providing personal protective equipment to inmates, or ensuring inmates and staff followed proper distancing protocols. As a result, Plaintiff was infected with Covid-19.

Plaintiff's first amended complaint, however, does not sufficiently connect the alleged failure to protect from the serious risk posed by Covid-19 to the named defendants, particularly the many supervisory personnel named. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), abrogated on other grounds by

Farmer v. Brennan, 511 U.S. 825 (1994).).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Plaintiff will be provided an opportunity to amend in order to link each named defendant, including supervisory defendants, to the alleged failure to protect from the risk posed by Covid-19.

          2.       Deliberate Indifference to Medical Needs

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, also gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness include whether a reasonable doctor would think that the condition is worthy of comment; whether the condition significantly impacts the prisoner's daily activities; and whether the condition is chronic and accompanied by substantial pain. McGuckin, 974 F.2d at 1059.

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See id. at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint, 801 F.2d at

8

1111. Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060. Further, negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Generally, there is no question that Covid-19 is a serious communicable disease and poses a substantial risk of serious harm to those exposed. See e.g., Helling, 509 U.S. at 33 (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); see also Hutto v. Finney, 437 U.S. 678, 682-83 (1978); Andrews v. Cervantes, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"); see, e.g., Wilson v. Williams, 961 F.3d 829, 840 (6th Cir. 2020) ("The Covid-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."); Plata v. Newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("The Covid-19 pandemic is 'unprecedented,' and no one questions that it poses a substantial risk of serious harm to [prison inmates]." (citation omitted)); Burgess v. Newsom, No. 1:21-cv-00077-SAB (PC), 2021 WL 4061611, at *4 (E.D. Cal. Sept. 7, 2021) (stating "COVID-19 is a serious communicable disease"), report and recommendation adopted by 2021 WL 4975140 (E.D. Cal. Oct. 25, 2021). Here, Plaintiff has satisfied the objective requirement. Covid-19 is a serious communicable disease that poses a substantial risk of serious harm to Plaintiff due to his exposure to the virus.

///

///

///

1              In this instance, however, Plaintiff fails to satisfy the subjective requirement. The key inquiry is not whether Defendants perfectly responded, complied with every guideline, or whether their efforts ultimately averted the risk; instead, the question is whether they reasonably responded or disregarded the risk. Plaintiff asserts that his cellmate tested positive for Covid-19 and was moved to a quarantine building, but alleges that other inmates that tested positive were left in the building and not transferred for isolation. Moreover, Plaintiff contends that he was afraid to allow prison staff to move or take him to the hospital "because they might force me onto a ventilator and cause me to die." See ECF No. 39, pg. 9. Plaintiff goes on to state that he was tested several times on December 7, 2020 and December 15, 2020. See id. Thus, Defendants did not consciously disregard the risk of further harm to Plaintiff because Defendants identified, tested, and moved to quarantine his cellmate and seemingly attempted to address Plaintiff's medical needs, but Plaintiff refused. Plaintiff's allegations demonstrate that he was provided medical care even if he did not accept it. Because Plaintiff has not alleged facts that the actions Defendants took in response to the alleged risk were not reasonable or that Defendants consciously disregarded any substantial risk of serious harm to Plaintiff, without more, Plaintiff fails to state a claim for a violation of Eighth Amendment.

           If Plaintiff is alleging that Defendants delayed in providing medical treatment to Plaintiff because he was only provided his inhaler after he filed a grievance, Plaintiff must demonstrate that Defendants' delay caused further injury. Plaintiff has not alleged facts to show that any delay caused further injury to Plaintiff. In fact, Plaintiff asserts that because of the Covid-19 infection, not the delay in medical care, the inhaler doesn't help with his breathing.

           Relatedly, to the extent that Plaintiff is alleging Defendants should have provided a different course of treatment in response to his positive Covid-19 test, a difference of opinion in medical treatment does not constitute deliberate indifference. Plaintiff must show that the treatment given was medically unacceptable under the circumstances, which Plaintiff has failed to do here. Plaintiff fails to allege any facts to show that Defendants' course of treatment was medically unacceptable under the circumstances or in conscious disregard of an excessive risk to Plaintiff's health. In other words, Plaintiff's allegations that Defendants failed to provide

adequate medical care after he contracted the virus is only a conclusion, not a fact. Without more, negligence in the provision of medical care does not violate the Eighth Amendment.

Finally, Plaintiff fails to indicate what actions each Defendant personally took or failed to take after Plaintiff contracted Covid-19 that resulted in deliberate indifference. As discussed above, Plaintiff must allege an actual connection or link between the actions of the named Defendants and the alleged deprivations.  As to the supervisor Defendants, Plaintiff must plead facts which allege that a defendant through their own individual actions, violated the Constitution. The conclusory allegations contained in Plaintiff's amended complaint are insufficient to state a claim of supervisory liability.

Therefore, Plaintiff has not alleged facts to state a claim for deliberate indifference as to Plaintiff's medical needs under the Eighth Amendment for which relief can be granted. Plaintiff will be provided an opportunity to amend.

### B. Due Process

Plaintiff does not state a cognizable claim for relief here for violation of the Due Process Clause related to his grievance process.  Inmates lack a liberty interest in the processing of an inmate appeal because there is no "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). A prison official's denial of an inmate appeal does not qualify as a constitutional violation. See id.  Plaintiff alleges that he submitted a grievance requesting that he be released due to his high risk status, but Defendant Gates, the person responsible for processing his grievance appeals, ignored Plaintiff's purported status and denied his appeal, without ever interviewing or talking to his physicians or Plaintiff.  See ECF No. 39, pgs. 9, 10, 12.  To the extent Plaintiff seeks relief against any Defendant for deciding his grievances or administrative appeals in a particular way, Plaintiff lacks a liberty interest in this regard.  Defendant Gates's denial of Plaintiff's grievance and/or appeals does not amount to a constitutional violation and thus Plaintiff fails to state a claim.

/ / /

/ / /

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

///
///
///
///
///
///

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed with leave to amend; and

2. Plaintiff shall file a second amended complaint within 30 days of the date of service of this order.

Dated: January 17, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13